PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SCOTT SWYSGOOD, | ) |
| | ) CASE NO. 5:17CV697 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| BOARD OF EDUCATION OF THE | ) |
| NORTHWESTERN LOCAL SCHOOL | ) |
| DISTRICT OF WEST SALEM, *et al.*, | ) **MEMORANDUM OF OPINION AND** |
| | ) **ORDER** |
| Defendants. | ) [Resolving ECF Nos. 43 & 47] |

Pending before the Court are two motions: (1) Plaintiff Scott Swysgood's Motion for Partial Summary Judgment (ECF No. 43) and (2) Defendants Board of Education of the Northwestern Local School District of West Salem and Superintendent Jeffrey Layton's Amended Motion for Summary Judgment (ECF No. 47). The parties have filed memoranda in opposition. ECF Nos. 50 & 51. They have also filed replies. ECF Nos. 53 & 54. Plaintiff has filed a sur-reply to Defendants' motion. ECF No. 58. For the reasons that follow, Plaintiff's motion is denied, and Defendants' motion is granted, except as to Plaintiff's breach of contract claim.

# I. Background[1]

**A. Plaintiff's Employment at the Northwestern Local School District**

Plaintiff began working as the Transportation Coordinator/Head Bus Mechanic for the Northwestern Local School District in January 2012. ECF No. 1 at PageID #: 3. As part of his job, Plaintiff was in charge of supervising the transportation department. ECF No. 40-1 at PageID #: 1059. This included, among other things, preparing and scheduling bus routes and assigning drivers. *Id.* at PageID #: 1060. Plaintiff also had duties as head mechanic, such as performing repairs on vehicles Northwestern owned. *Id.* at PageID #: 1061.

Plaintiff's employment with the school district was through contract. He signed the first of three contracts on February 1, 2012. ECF No. 1-1. The contract listed an annual salary of $22,109.00. *Id.* This total came from an hourly rate of $19.46, paid for 142 work days in the year. *Id.* A heading at the top of the contract stated "SUPPORT EMPLOYEE'S CONTRACT - **TWO** YEAR(S) LIMITED." *Id.* (emphasis in original).

Plaintiff later entered into a three-year contract that paid him an annual salary of $49,131.00. ECF No. 1-3. This contract listed an annual hourly rate of $23.62, paid for 260

---

[1] The Case Management Plan (ECF No. 15) entered on June 2, 2017 provides, in pertinent part:
> Lead counsel of record shall confer with one another in person in order to prepare written stipulations as to all uncontested facts to be presented by the dispositive motions. The stipulations shall be filed with the Court on or before December 4, 2017.

ECF No. 15 at PageID #: 144. No fact stipulations were filed. Instead, the parties filed a stipulation indicating that there were not stipulations as to uncontested facts. ECF No. 44. This does not comply with the spirit of the Court's order. Upon reviewing the motion briefing, it is patent that the parties could have stipulated to certain facts.

(5:17CV697)

work days in the year. *Id*. As with his prior contract, this one contained a heading describing the document as a "SUPPORT EMPLOYEE'S CONTRACT." *Id*.

Plaintiff entered into one more contract. For the 2016-17 school year, Plaintiff's salary was "$55,401.00 in addition to a 1% salary bonus." ECF No. 1-5. This contract did not include an hourly rate, but it did specify that the contract contemplated 260 working days. *Id*. The contract also did not have a heading listing Plaintiff as a support employee. The contract listed things not included in his prior contracts, such as term life insurance, medical insurance and reimbursement for unused vacation days. *Id*.

On August 3. 2016, two days after the 2016-17 contract went into effect, Plaintiff received a document that contained a heading of "SALARY NOTIFICATION: SUPPORT STAFF." ECF No. 1-7. The notification, which was not part of Plaintiff's contract, listed his salary as $55,955.00. *Id*. It also stated "[a]ny additional hours or days your supervisor may ask you to work should be so noted on a time sheet and submitted to the Treasurer's Office for additional compensation." *Id*.

**B. Accumulation of Excess Hours**

During his time working at the Northwestern Local School District, Plaintiff kept records of the hours that he worked so as to document how many hours over forty he worked each week. ECF Nos. 1-2, 1-4, and 1-6. Plaintiff contends that he had accrued 4912.25 hours of compensatory time by the time his employment ended. ECF No. 43 at PageID #: 1267. Each month, Plaintiff would give a copy of the hours he had accrued the prior month to either Layton or his secretary. ECF No. 30-1 at PageID #: 293-94. Layton would then review the time sheet

3

listing the hours, sign the time sheet, and scan a copy of the time sheet onto his computer on the school's computer network. *Id.* at PageID #: 295.

The parties dispute whether Plaintiff was owed monetary compensation for these hours. In his deposition, Plaintiff testified that Layton told him when he began working in the school system that he should keep track of all his time because Plaintiff "would be compensated for it at a certain time." ECF No. 39-1 at PageID #: 985-86. Plaintiff also testified that Kim Wellert, a school board member, told him that he was entitled to compensation for his earned compensatory time. *Id.* at PageID #: 949. Layton testified that he told Plaintiff that he did not have to use the compensatory time record sheet, because it was intended for hourly employees. ECF No. 30-1 at PageID #: 309. Layton also testified that he sensed Plaintiff "felt validation" from submitting the time sheets, and, due to that, he never told Plaintiff to stop handing them in to him. *Id.* at PageID #: 323.

The Northwestern School District has three types of employees: (1) hourly employees; (2) administrative employees; and (3) certified employees. ECF No. 36-1 at PageID #: 760-62. The parties dispute whether Plaintiff was an hourly employee or an administrative employee.

Administrative employees are eligible to participate in an informal flex time policy. *Id.* at PageID #: 328. According to Layton, administrators could use flex time for need-based requests when they were up-do-date on their responsibilities. *Id.* at PageID #: 328. Administrators did not necessarily have to log their hours, but Layton liked to see documentary requests for longer flex time requests, such as taking an entire week off of work. *Id.* at PageID #: 329. The use of flex time required Layton's approval. *Id.* at PageID #: 341. Layton also testified that an

administrator could only use flex time during the school year in which they earned that time; an administrator could not carry over flex time from a prior year. *Id.* at PageID #: 260-61. Layton explained that the accrual of overtime pay for hourly workers required pre-approval, whereas administrators did not need to attain pre-approval before working extra hours. *Id.* at PageID #: 330-31. A document entitled "SUPPORT STAFF SUPPLEMENTARY PAY PLANS," states that employees may accrue up to "240 hours (160 overtime hours)" of compensatory time and "employee[s] will be compensated for time beyond this maximum accrual at the rate of one and one-half time his or her normal hourly rate of pay." ECF No. 41-1 at PageID #: 1196.

Plaintiff contends that he worked as an hourly employee, rather than an administrative employee. Plaintiff testified that he did not understand himself to be an administrator. Rather, he believed that his job consisted of "work[ing] on the buses and tak[ing] care of the supervision" of bussing for the school system. ECF No. 39-1 at PageID #: 885. He also testified that no one told him his position was an administrative position. *Id.*

Plaintiff admits that there were "several times that [he] took comp time," and, when he did so, he completed forms to verify his use of compensatory time. *Id.* at PageID #: 931. For example, Plaintiff took compensatory time to attend a ceremony to commemorate his son joining the Navy. *Id.* at PageID #: 984-85. Plaintiff admitted that he could use compensatory time "at any time," so long as Layton approved. *Id.* at PageID #: 126.

(5:17CV697)

To date, Plaintiff has not received any payments for compensatory time he accrued. Throughout his time in the school system, Plaintiff did not ask Layton why he did not receive overtime pay on a monthly basis.[2]  *Id.* at PageID #: 932.

**C. End of Plaintiff's Employment**

Plaintiff wrote a letter to the school board stating, as of August 1, 2016, he intended to use his available compensatory time "to run out [his] current 2016-2017 school year contract." ECF No. 41-1 at PageID #: 1169. Plaintiff's contract for the 2016-2017 school year began on August 1, 2016. *See* ECF No. 1-5.

Layton rejected Plaintiff's request, because Plaintiff would not be able to meet his job responsibilities if he took an entire year off of work. ECF No. 30-1 at PageID #: 336-37.

Starting on August 1, 2016, Plaintiff did not complete any work for the school district. He came into work on the first, second, and third of August, but he only did so to speak with Layton. ECF No. 39-1 at PageID #: 968. He claimed that he was up to date with his responsibilities, so he was using comp time. *Id*. Also during that time, Plaintiff removed a tool chest he kept at work. ECF No. 42-3 at PageID #: 1249. The chest was higher than five feet tall and about ten feet long. *Id*. And, Plaintiff left his office keys on his desk, which bus driver Johneen Gordon took to mean that Plaintiff was not coming back to work. *Id*.

---

[2] Plaintiff's argues that he should receive payment for his compensatory time in a manner similar to overtime wages. In arguing over this position, the parties use the terms "compensatory time" and "overtime" interchangeably when discussing the amount of compensatory time Plaintiff collected and whether he was owed payment for that time.

(5:17CV697)

On August 6, 2018, Plaintiff met with his former employer, Frontz Drilling. That same day he entered into an agreement to begin working for Frontz again. ECF No. 41-1 at PageID #: 1204. He then began his new job at Frontz on August 8, 2016. ECF No. 39-1 at PageID #: 998-99. He also testified that he told some of his co-workers that he was "comping out," rather than quitting. *Id.* at PageID #: 999. Plaintiff testified that he spoke to Kim Wellert on August 2, 2016, and Wellert told him that Layton intended to fire Plaintiff. *Id.* at PageID #: 1000-01.

According to an August 8, 2016 letter from Layton to Plaintiff, Layton and Plaintiff met and discussed Plaintiff's employment. ECF No. 41-1 at PageID #: 1210. Layton wrote that, during their conversation, Plaintiff "indicated several times" that he did not plan to return to work, but instead, expected payment of his salary through compensatory time. *Id.*

In his letter, Layton wrote that Plaintiff's actions constituted job abandonment and the Board of Education had authorized him to accept Plaintiff's resignation. *Id.* On August 10, 2016, the Board of Education held a meeting, during which, it accepted Plaintiff's resignation. ECF No. 30-1 at PageID #: 387-88; ECF No. 41-1 at PageID #: 1211. Plaintiff did not learn of this meeting until he received a letter, dated August 18, 2016, stating the Board of Education had accepted his resignation. ECF No. 41-1 at PageID #: 1211.

The School Board has refused to pay Plaintiff for the compensatory time he has amassed. In a meeting held after Plaintiff's employment had ended, the Board concluded that it would not pay Plaintiff for the compensatory time he had accrued. ECF No. 32-1 at PageID #: 520. Kim Wellert testified that he did not think the Board could pay Plaintiff overtime wages, "even if [it] wanted to," because Plaintiff's employment had ended. *Id.* at PageID #: 521. Wellert also

7

(5:17CV697)

stated that the School Board would not pay Plaintiff for his compensatory time, because he had accumulated too many hours. Id. at PageID #: 520. Charles Beck, another School Board member, testified the payment of overtime wages is not something on which the Board would vote. ECF No. 31-1 at PageID #: 472. He also testified "custodian people may work over but they get the okay, and nobody works anything close" to the hours Plaintiff accumulated. Id. at PageID #: 457.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trustees., 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Ky. Dep't. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). The

8

(5:17CV697)

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party. *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

9

(5:17CV697)

### III. Discussion

**A. Breach of Contract**

Both sides have moved for summary judgment on Plaintiff's breach of contract claim. ECF Nos. 43 & 47. Plaintiff argues that it is undisputed that his contracts permitted him to accumulate compensatory time and that he was due compensation for that time. ECF No. 43 at PageID #: 1274. Plaintiff points out that two of his contracts listed him as a support employee, and support employees are entitled to payment for compensatory time. *Id*. Defendants, on the other hand, argue that the designation of Plaintiff as a support employee only appears in the preprinted portion of the contract and Plaintiff's title of 'Mechanic/Transportation Supervisor' trumps the pre-printed language. ECF No. 47 at PageID #: 1313-14.

Contractual interpretation requires discerning the intent of the parties, *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007), which is presumed to reside in the language of the contract itself. *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996). When contractual language is unambiguous, courts are required to apply the language's plain meaning. *City of St. Marys*, 875 N.E.2d at 566. "Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham*, 667 N.E.2d at 952. Even when admissible, extrinsic evidence cannot be used to alter express contractual provisions. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 62 (Ohio 2003); *see also Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) ("[W]he[n] the

(5:17CV697)

terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

Contractual language is ambiguous when its meaning cannot be determined from the "four corners of the agreement," or when the language is susceptible to more than one reasonable interpretation. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The contract must be construed as a whole to determine whether a specific provision of the contract is ambiguous. *Tri State Group, Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio 2002). The key, however, is reasonable interpretation; ambiguity does not exist merely because the parties offer substantially different interpretations. *The Glidden Co. v. Kinsella*, 386 F. App'x. 535, 542 (6th Cir. 2010). Silence as to a provision does not create ambiguity either. *See Savedoff*, 524 F.3d at 763 (noting that "it is not the function of courts in Ohio to formulate a new contract for the parties" if they did not include a term that would govern the dispute). Finally, a provision is not considered ambiguous because "it will work a hardship upon one of the parties thereto and a corresponding advantage to the other." *Dugan & Meyers Constr. Co., Inc. v. Ohio Dep't of Admin. Servs.*, 864 N.E.2d 68, 73 (Ohio 2007) (quoting *Ohio Crane Co. v. Hicks*, 143 N.E.2d 388, 389 (Ohio 1924)). "[I]t is not the province of courts to relieve parties of improvident contracts." *Id.* (quoting *Ohio Crane Co.*, 143 N.E.2d at 389).

In this case, Plaintiff's contracts are ambiguous. As both parties note, the contract headings, where they exist, described Plaintiff as a support employee. Plaintiff's title, however, suggests that he is not a support employee. But, a suggestion is not conclusive. Defendants'

11

(5:17CV697)

position requires the Court to take an inferential leap that a mechanic/transportation supervisor is, by definition, not a support employee. That is a question of fact.

Although Plaintiff claims he is entitled to compensatory pay, his first two contracts do not unambiguously state that. Indeed, they are silent on the topic. Both contracts specify a salary. They also contain an hourly rate, but that, in and of itself, does not mean that Plaintiff merited payment for compensatory time, because his listed salary was a function of the rate and amount of days in the year the contracts required him to work. Therefore, similar to Defendants' position, Plaintiff's position requires an inferential leap to reach the interpretation he urges. Also, to reach the conclusion that Plaintiff was owed payment for his compensatory time, he relies on a document titled "Support Staff Supplementary Pay Plans" (ECF No. 41-1 at PageID #: 1196), but this document is not part of the contract.

When a contract is ambiguous, the Court may enter summary judgment when "extrinsic evidence leaves no genuine issue of material fact and permits contract interpretation as a matter of law." *Averill v. Gleaner Life Ins. Co.*, 626 F.Supp.2d 756, 761 (N.D.Ohio 2009) (Carr, J.) (citing *Int'l Union, United Auto Aerospace and Agr. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999)).

As alternatives to their contractual language arguments, both parties contend that the course of performance supports their preferred conclusion. Plaintiff claims that a memorandum listing his estimated compensatory time balance (ECF No. 41-1 at PageID #: 1274), as well as Kim Wellert's claim that paying Plaintiff compensatory time would cost too much money show that Defendants knew Plaintiff was owed payment. ECF No. 43 at PageID #: 1274-75.

(5:17CV697)

Defendants argue that the following factors prove that Plaintiff was an administrator: (1) various documents list him as an administrator; (2) Plaintiff carried out the duties of an administrator, including supervising individuals; (3) and Plaintiff's job description lists his position as FLSA exempt. ECF No. 47 at PageID #: 1314-16. Also, Defendants point out that Plaintiff used compensatory time to take time off work, which evidences an understanding on Plaintiff's part that he was an administrator. ECF No. 54 at PageID #: 1384-85.

The extrinsic evidence the parties rely on requires a fact finder to weigh the evidence. Plaintiff claims that he was told to log his time and that he would receive compensation for it. Although he never asked for overtime pay during his employment, it is for a finder of fact to say whether that punctures the credibility of Plaintiff's claim. Also, Kim Wellert's testimony suggests that he, too, may have understood that Plaintiff should have been paid compensatory time, and the reason the board chose not to pay him was because he was owed too much money. A finder of fact must decide what to make of this.

### B. Denial of Due Process

Plaintiff asserts that he held two property interests for which Defendants failed to provide procedural due process: (1) a right to continuing employment; and (2) a right to payment for the compensatory time he accrued.

#### i. Right to Continuing Employment

The parties dispute whether the manner in which Plaintiff's employment with the Northwestern Local School District ended amounts to a deprivation of Plaintiff's Due Process rights. Defendants contend that Plaintiff voluntarily resigned from his job. ECF No. 47 at

13

(5:17CV697)

PageID #: 1307-13. Plaintiff, on the other hand, argues that he did not quit his job, but rather, that Defendants terminated Plaintiff without notice in violation of his procedural rights. ECF No. 51 at PageID #: 1355-57. Specifically, he asserts that Defendants failed to provide him with notice of his termination as required under R.C. § 3319.081. Id. at PageID #: 1356-57.

A procedural due process claim has three elements: (1) a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) a deprivation of that interest within the meaning of the Due Process Clause; and (3) the failure of the state to afford adequate procedural rights prior to deprivation of the interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

The parties do not dispute the first element: Plaintiff had a property interest in his position. Instead, the parties contest whether Plaintiff relinquished his position voluntarily.

In instances when a plaintiff voluntarily resigns, "the defendant cannot be found to have deprived [the plaintiff] of that interest without due process of law." *Rhoads v. Board of Educ. of Mad River Local School Dist.*, 103 F.App'x. 888, 894 (6th Cir. 2004). Similarly, an individual who abandons his job voluntarily also relinquishes his property interest in continued employment. *Carrington v. Mahan*, 51 F.3d 106, 107-08 (8th Cir. 1995). In *Carrington*, plaintiff took umbrage to her transfer to a new department, and failed to report for work. Id. at 106. Carrington had grieved her transfer, but an associate principal denied her a hearing on her transfer, even though she had a right to one. Id. The associate principal also denied Carrington's request for a leave of absence. Id. The Eighth Circuit concluded "[i]t is clear that Carrington was entitled to a hearing on her transfer grievance, but it is equally clear that she had an

14

(5:17CV697)

obligation to report for work in her new position and to work pending the disposition of that grievance." *Id.* at 107.

Much like Carrington, Plaintiff voluntarily abandoned his job. After Layton rebuffed Plaintiff's request to use compensatory time for an entire year, Plaintiff failed to continue working at his job. He also secured replacement employment by returning to his prior employer. Additionally, he removed a massive tool chest from his work site. The combination of these three facts yields one conclusion: Plaintiff had no intention of returning to work at the Northwestern Local School District. Even assuming that failing to allow Plaintiff to take compensatory time violated a right of Plaintiff's, he still had a duty to report to work while he attempted to vindicate that right.[3] Thus, Plaintiff abandoned his job.

Plaintiff contends that Layton duped the Board into believing that Plaintiff had abandoned his job (ECF No. 51 at PageID #: 1358), but the facts contradict this theory. Plaintiff claims that Layton misrepresented Plaintiff's attendance to the Board. He contends Layton told the Board that Plaintiff "had not been at work for an entire week." *Id*. Dismissing Layton's purported account to the Board, Plaintiff asserts that he was, in fact, at work on August 1st, 2nd, and 3rd of 2016. *Id*. Plaintiff admits, however, that he only came into work on those days to speak with Layton, not to work. ECF No. 39-1 at PageID #: 968. Indeed, Plaintiff even testified that, although he went into his place of employment, he did not perform work related to his job. *Id.* at PageID #: 969-71. Thus, assuming Layton told the Board Plaintiff was not at work on

---

[3] As a prerequisite to using compensatory time, Plaintiff had to receive approval from his supervisor.

15

(5:17CV697)

those days, he was not acting "with malice" as Plaintiff contends (ECF No. 51 at PageID #: 1358), but rather, explaining that Layton was not working his normal hours. Also, Plaintiff's theory ignores that, within a week of leaving Northwestern, he began working at Frontz again.

Based on the foregoing, Plaintiff abandoned his job.

As Plaintiff points out in his sur-reply there is an issue of fact as to whether the letter accepting his resignation due to job abandonment was sent by certified mail, but that fact is immaterial. Plaintiff's claim that he did not receive the letter by certified mail directly contradicts Lesa Forbes' affidavit that says the opposite. Although such a dispute could be an issue for the jury to resolve, it is not in this case. Plaintiff's job abandonment obviates the need to resolve that factual dispute.

### ii. Right to Payment for Compensatory Time Accrued

Plaintiff also contends that the failure to pay him for the compensatory time he accrued gives rise to a Section 1983 claim, but his breach of contract claim provides him sufficient due process. Just last year, the Sixth Circuit held that a procedural due process claim is improper when the plaintiff is seeking relief he can attain through a breach of contract claim. *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017). Indeed, *Kaminski* held that a procedural due process claim will not lie when the only difference it has from "any other garden-variety breach of contract claim" is when a government entity "happen[s] to be one of the contracting parties." *Id*. (quotation omitted). In this case, Plaintiff has failed to show how his unpaid compensatory time claim is anything more than a typical breach of contract claim. Therefore, the breach of contract

(5:17CV697)

claim proves a sufficient vehicle in which Plaintiff may proceed in his attempt to recover the wages he claims he is owed.[4]

### C. Constructive Discharge

Plaintiff offers no opposition to Defendants' argument that Plaintiff cannot establish a triable claim of constructive discharge. Because Plaintiff failed to meet his burden in opposing summary judgment on his constructive discharge claim, Plaintiff has abandoned this claim and waived any argument concerning dismissal of such claim. *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff's failure to respond with any evidence supporting his negligent infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count.").

While it is possible that Plaintiff intended for his argument on his Due Process claim also to apply to his constructive discharge claim, he did not expressly state that. If he had, his argument still fails. Plaintiff argues that "Layton had been actively working for almost two years to get rid of Plaintiff." ECF No. 51 at PageID #: 1358. This argument lacks factual support.

To prove a constructive discharge under Ohio law, a plaintiff must show that "the employer's actions made working conditions so intolerable that a reasonable person under the

---

[4] Plaintiff attempts to distinguish *Kaminski* in his sur-reply, but in doing so he misreads *Kaminski*.

17

(5:17CV697)

circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 588-89, 664 N.E.2d 1272 (Ohio 1996).

Plaintiff claims that Layton had been attempting to get rid of him for two years, but there is no evidence to support this claim. First, he claims that Layton had proposed reorganizing the transportation department. ECF No. 51 at PageID #: 1358. Second, he claims that Kim Wellert told him that Layton was planing to fire Plaintiff. *Id*. As to the reorganization claim, Plaintiff has not shown that this reorganization would mean that Plaintiff would lose his job. The proposed reorganization would have kept Plaintiff as head mechanic and given supervisory responsibilities to someone else. *See* ECF No. 41-1 at PageID #: 1197. This proposal does not indicate whether Plaintiff would receive a reduction in salary. As to what Plaintiff claims Wellert told him, Plaintiff had already begun the process of abandoning his job by the time he learned of Layton's purported intent. Plaintiff failed to performed any work on August 1st or 2nd, even though Layton had denied his request for comp time.

Accordingly, even if Plaintiff had intended to defend the constructive discharge claim through his arguments on his Due Process claim, he fails to show that there were circumstances sufficient to compel resignation. Therefore, his constructive discharge claim fails.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is denied, and Defendants' motion is granted in all parts, except as to Plaintiff's breach of contract claim.

18

(5:17CV697)

Going forward, the only claim in dispute is Plaintiff's breach of contract claim.

    IT IS SO ORDERED.

| | |
|---|---|
|  June 20, 2018  |  */s/ Benita Y. Pearson*  |
| Date | Benita Y. Pearson |
| | United States District Judge |